# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL FOSTER, | 1:10-cv-01684-OWW-SMS (HC) |
|     Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
|     v. | |
| KATHLEEN ALLISON, | [Doc. 1] |
|     Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

RELEVANT BACKGROUND

Following a jury trial in the Kings County Superior Court, Petitioner was convicted of committing battery on a non-confined person by a prisoner (Cal. Penal Code § 4501.5[1]), with two prior serous felony convictions (§§ 667 & 1170.12).[2]

On January 18, 2007, the trial court denied Petitioner's motion for a mistrial and sentenced him to prison for twenty-five years to life.[3]

On May 1, 2007, Petitioner filed a petition for writ of habeas corpus (07W0081A) in the

---

[1] All further statutory references are to the California Penal Code unless otherwise indicated.

[2] This was Petitioner's second trial as the first trial resulted in a hung jury.

[3] The court ordered this sentence to run consecutive to a previously imposed term in case number BA19821.

1

1  Kings County Superior Court.  The petition was denied on September 14, 2007.

2        On October 1, 2007, Petitioner filed a petition for writ of habeas corpus (F053816) in the
3  California Court of Appeal.

4        On April 8, 2008, the California Court of Appeal affirmed the judgment in case number
5  F052099.  (Ex. A, to Answer.)  On this same date, the appellate court issued an Order to Show
6  Cause in habeas case number F053816.  The court found Petitioner made a sufficient showing to
7  warrant an evidentiary hearing on his ineffective assistance of counsel claim and remanded the
8  matter back to the superior court.

9        The Kings County Superior Court began the evidentiary hearing in case number
10  (07W0081A) on March 3, 2009 and concluded on March 20, 2009.  The Superior Court Judge
11  George Orndoff found that Petitioner failed to establish his trial attorney, Robert Stover, rendered
12  ineffective assistance.

13        On April 27, 2009, Petitioner filed a petition for writ of habeas corpus in the California
14  Court of Appeal.  The petition was denied on July 29, 2009.

15        On August 12, 2009, Petitioner filed a petition for rehearing (F057469) in the California
16  Court of Appeal.  The petition was denied on August 21, 2009.

17        On August 14, 2009, Petitioner filed a petition for writ of habeas corpus (F058273) in the
18  state appellate court.  The petition was denied on September 3, 2009.

19        On August 27, 2009, Petitioner filed a petition for review (S175801) in the California
20  Supreme Court, which was denied on November 10, 2009.

21        On October 1, 2009, Petitioner filed a petition for writ of habeas corpus (07W0081B) in
22  the Kings County Superior Court.  The petition was denied on December 4, 2009.

23        On January 26, 2010, Petitioner filed a petition for writ of habeas corpus (F059327) in the
24  state appellate court.  The petition was on February 3, 2010.

25        On February 26, 2010, Petitioner filed a petition for review (S180439) in the California
26  Supreme Court, which was denied on March 30, 2010.

27        On May 6, 2010, Petitioner filed another petition for writ of habeas corpus (07W0081C)
28  in the Kings County Superior Court.  The court denied the petition on July 14, 2010.

On May 10, 2010, Petitioner filed a petition for writ of habeas corpus (F060066) in the state appellate court. The petition was denied on May 13, 2010.

On May 24, 2010, Petitioner filed a petition for review in the California Supreme Court. The court denied the petition on July 7, 2010.

Petitioner filed the instant petition for writ of habeas corpus on September 16, 2010. Respondent filed an answer to the petition on February 11, 2011. Petitioner did not file a traverse.

## STATEMENT OF FACTS[4]

McVay testified that he was working as a floor officer on Thanksgiving Day in 2004. He noticed that appellant was trying to gain access to the prison yard. However, appellant was not eligible for the yard that day. McVay asked another officer to call appellant back to the control building over the intercom system. Appellant was agitated. McVay told appellant to return to his cell. Appellant refused. McVay decided to verbally counsel appellant in a private setting. He and another officer took appellant to a holding cell in the program office. The other officer had to return to the yard so McVay informed his lieutenant that he had placed appellant in the holding cell and went to find another officer to assist him. McVay asked the first correctional officer that he encountered, Jeffrey Smith, to assist him and Smith agreed.

McVay and Smith stood outside the holding cell. McVay spoke to appellant for approximately five minutes. Smith told appellant to turn and face the back of the cell. McVay stepped to the right of the cage and Smith unlocked the door. The door swung all the way back against the adjoining cell. Appellant was directed to back out of the cell. Just as appellant reached the outside of the cell, he turned and punched McVay with his left fist on the side of McVay's face. The blow struck McVay between his right eyebrow and cheekbone. As the officers forced appellant to the ground, all three men fell to the floor. Appellant attempted to break free and McVay sprayed him in the face with pepper spray. Appellant was subdued, handcuffed and taken to be decontaminated.

McVay reported to the lieutenant that he was hurt and was told to go to the facility hospital. A nurse provided him with an ice pack. She directed him to seek outside medical attention. That evening, McVay noticed that he had a black eye and a bruised ankle. McVay saw a doctor five days later. He did not return to full duty until June 2005. The vision in his right eye is still blurry.

Smith testified that after appellant cleared the cell area, he grabbed appellant's left arm. Appellant took one step toward McVay and jerked his arm out of Smith's grasp. Smith saw appellant swing his arm toward McVay. Smith did not see if appellant's fist made contact with McVay's body. However, Smith heard a sound that was consistent with a fist striking someone. It sounded like a

---

[4] The Court finds the Court of Appeal correctly summarized the facts in its decision on direct appeal in case number F052099, attached as Exhibit A, to Answer. Thus, the Court adopts the factual recitations set forth by the California Court of Appeal, Fifth Appellate District.

3

thud similar to the sound of a thump on a watermelon.

A prison nurse testified that she examined appellant shortly after the incident. Appellant did not complain about any injuries other than burning eyes. She did not notice any injuries other than redness in his eyes.

Appellant testified on his own behalf. He admitted numerous felony convictions and acknowledged that he was serving a life sentence under the Three Strikes Law when the incident occurred. Appellant admitted that he was not supposed to be on the yard on Thanksgiving Day. He said that McVay handcuffed him and left him in a holding cell for 10 to 15 minutes. McVay returned to the holding cell with Smith. His handcuffs were removed and he exited the holding cell. McVay told him to get against the wall and put his hands up. Appellant complied. McVay asked him why he was messing up his program and then repeatedly hit him on the side of his body. Appellant did not respond, but just fell to the ground. McVay kicked him while he was lying on the ground. McVay put his pepper spray canister in appellant's mouth and sprayed him. McVay also pepper sprayed him in the eyes. Smith just stood by. Appellant said that he was not injured because McVay did not hit or kick him very hard.

Smith was recalled as a defense witness. Smith acknowledged that the first time he testified about hearing the sound of appellant's fist making contact with McVay's head was at trial.

Siler was called as a defense witness at the first trial only. Siler testified that he witnessed McVay assault an inmate named Robert Milton on March 17, 2004. Milton was in the holding cage in the medical area. McVay approached Milton and told him that he was going to get him because Milton wrote an inmate complaint about him. McVay left and then returned with another officer and a sergeant. They made Milton put on handcuffs. Then they beat Milton with batons and pepper sprayed him. McVay has instigated similar incidents with other inmates. Siler admitted six prior felony convictions, including two convictions for battering correctional staff.

## DISCUSSION

### I.   Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. The challenged conviction arises out of the Kings County Superior Court, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its

4

enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997; Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct. 1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

II.     Standard of Review

Where a petitioner files his federal habeas petition after the effective date of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), he can prevail only if he can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of [the Supreme] Court." Harrington v. Richter, __ U.S. __, 131 S.Ct. 770, 785 (2011) (citing 28 U.S.C. § 2254(d)(1) and Williams v. Taylor, 539 U.S. 362, 412 (2000). Habeas relief is also available if the state court's decision "involved an unreasonable application" of clearly established federal law, or "was based on an unreasonable determination of the facts" in light of the record before the state court. Richter, 131 S.Ct. 785 (citing 28 U.S.C. § 2254(d)(1), (d)(2)). "[C]learly established ... as determined by" the Supreme Court "refers to the holdings, as opposed to the dicta, of th[at] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. at 412. Therefore, a "specific" legal rule may not be inferred from Supreme Court precedent, merely because such rule might be logical given that precedent. Rather, the Supreme Court case itself must have "squarely" established that specific legal rule. Richter, 131 S.Ct. at 786; Knowles v. Mirzayance, __ U.S. __, 129 S.Ct. 1411, 1419 (2009). Moreover, the Supreme Court itself must have applied the specific legal rule

5

to the "context" in which the Petitioner's claim falls. Premo v. Moore, __ U.S. __, 131 S.Ct. 733, 737 (2011). "A state court's determination that a claim lacks merits precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Richter, 131 S.Ct. at 786.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceedings, § 2254(d)(2)." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Both subsections (d)(2) and (e)(1) of § 2254 apply to findings of historical or pure fact, not mixed questions of fact and law. See Lambert v. Blodgett, 393 F.3d 943, 976-77 (2004).

Courts further review the last reasoned state court opinion. See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991). However, "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." Richter, 131 S.Ct. at 784.

III.     Ineffective Assistance of Counsel

Petitioner contends his trial counsel rendered ineffective assistance in several different respects.

    A.     Evidentiary Hearing in State Court

Pursuant to the California Court of Appeal's remand, the trial court conducted a lengthy evidentiary hearing regarding Petitioner's ineffective assistance of counsel claim. At this hearing, Petitioner was represented by Mr. Hugo Gomez-Vidal. However, at the beginning of the hearing Petitioner requested to represent himself. The court granted Petitioner's request, and Mr. Gomez-Vidal stood by as "back-up" counsel.

Petitioner presented the testimony of his trial counsel, Mr. Robert Stover. Mr. Stover was questioned extensively as to his representation in Petitioner's first and second trials. When asked why counsel did not point out an inconsistency in McVay's reporting of his injuries, counsel explained that the medical report showed injuries consistent with his testimony that Petitioner

struck him. Counsel also pointed out that the defense's theory was that Petitioner never touched McVay and highlighting McVay's injuries would have bolstered his testimony that he was struck.

Mr. Stover indicated that he did not call inmate Hubbard as a witness because although counsel had sent him a letter requesting communication, he never received any communication prior to the second trial.

Mr. Stover attacked McVay's credibility at the second trial by pointing out inconsistent statements from the first trial and the inconsistency between McVay's version of the incident and Officer Smith's version. Mr. Stover explained, "in the second trial the shift was toward Officer Smith and his inconsistent statements and that's where, after a discussion with you, we agreed to focus." Mr. Stover indicated that although he presented the testimony of inmate Lorezno Siler at the first trial, he did not do so at the second trial because he believed Siler's testimony may have mislead the jury from the facts he wanted them to focus on, i.e. the huge discrepancies between Officer Smith's statements. (RT 56.) Mr. Stover stated that this was a tactical and joint decision between himself and Petitioner. (RT 58.)

With regard to calling inmate Thompson as a witness, Mr. Stover explained that he did not believe Thompson to be credible after interviewing him prior to the second trial. Counsel felt that Thompson "appeared to have a real vendetta against CDC and he wanted to talk about general issues." At one point, Thompson referred to McVay as "one of the pigs that was at the prison."

Petitioner then presented the testimony of fellow inmates Eric Walker and James Thompson. In addition, Petitioner testified at the hearing and expressed his complaints about counsel's performance at the second trial. Petitioner also examined officer McVay.

Approximately half way through the hearing, Mr. Gomez-Vidal took over representation of Petitioner. Counsel recalled inmate Walker and presented testimony of inmate Eddie Hubbard. Counsel also presented testimony by Mr. Stover's private investigator Richard Martinez, and recalled officer McVay.

After argument by both parties, the trial court found:

> The Court has heard the testimony of several witnesses, including the video conferencing testimony provided by Inmate Hubbard.
>
> The Court also viewed the exhibits in the case and transcripts from the first two trials in this matter.
>
> It's a little troubling because at the time, Mr. Foster expressed satisfaction from the first trial including Mr. Stover's performance in the first trial which resulted in a hung jury. His expressed dissatisfaction came at the time of the second trial.
>
> A lot of things being argued in this hearing go back to before the second trial. As a matter of fact, they go back to before the first trial. In attempting to keep those two matters separate, the Court has to look at Mr. Stover's overall performance in representing Mr. Foster and the Court is not able to find that Mr. Stover's performance failed below the required legal standard of reasonable professional judgment is [sic] the basis for his change in trial tactics between Trial 1 and Trial 2. Accordingly, the Court does not find that Mr. Stover's counsel was ineffective.

(RT of Evid. Hearing at 1234-1235.)

B.  Standard of Review

The law governing ineffective assistance of counsel claims is clearly established for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d). Canales v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998.) In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the court must consider two factors. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994). First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687. The petitioner must show that counsel's representation fell below an objective standard of reasonableness, and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances. Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995). Judicial scrutiny of counsel's performance is highly deferential. A court indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir.1994).

1    Second, the petitioner must show that counsel's errors were so egregious as to deprive
2 defendant of a fair trial, one whose result is reliable. Strickland, 466 U.S. at 688. The court must
3 also evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's
4 ineffectiveness. Id.; Quintero-Barraza, 78 F.3d at 1345; United States v. Palomba, 31 F.3d 1356,
5 1461 (9th Cir. 1994). More precisely, petitioner must show that (1) his attorney's performance
6 was unreasonable under prevailing professional norms, and, unless prejudice is presumed, that
7 (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result would
8 have been different.

9    A court need not determine whether counsel's performance was deficient before
10 examining the prejudice suffered by the petitioner as a result of the alleged deficiencies.
11 Strickland, 466 U.S. 668, 697, 104 S.Ct. 2052, 2074 (1984). Since it is necessary to prove
12 prejudice, any deficiency that does not result in prejudice must necessarily fail. Ineffective
13 assistance of counsel claims are analyzed under the "unreasonable application" prong of
14 Williams v. Taylor, 529 U.S. 362 (2000). Weighall v. Middle, 215 F.3d 1058, 1062 (2000).

15    C.    Analysis of Claim

16    The state courts' determination of this issue was not contrary to, or an unreasonable
17 application of, clearly established Supreme Court precedent. The evidence produced at the
18 evidentiary hearing established Mr. Stover was not ineffective at Petitioner's second trial. At the
19 hearing, Mr. Stover set forth his defense strategy at the second trial and the reasons underlying
20 his tactical decisions. There is simply no showing that counsel was ineffective or that Petitioner
21 was prejudiced. Accordingly, this claim fails under Strickland.

22 IV.    Ineffective Assistance of Habeas Counsel

23    Petitioner contends that habeas counsel who presented him at the post-conviction
24 evidentiary hearing, rendered ineffective assistance by failing to remove a biased judge, failing to
25 obtain a transcript of the hearing, and failing to file a notice of appeal.

26    Petitioner has no constitutional right to counsel in these habeas proceedings, and thus
27 bears the risk of attorney error. Murray v. Carrier, 477 U.S. 478, 488 (1986); Smith v. Idaho, 392
28 F.3d 350, 357 (9th Cir. 2004), as amended. Therefore, federal habeas relief is not available for

claims based on ineffective assistance of counsel in connection with collateral proceedings. See 28 U.S.C. § 2254(I); Coleman v. Thompson, 501 U.S. 722, 756-757 (1991); Pennsylvania v. Finley, 481 U.S. 551, 555 (1987); see also Bonin v. Vasquez, 999 F.2d 425, 428-430 (9th Cir. 1993) (repeatedly noting that "the protections of the Sixth Amendment right to counsel do not extend to either state collateral proceedings or federal habeas corpus proceedings"; and rejecting the argument that, in states in which certain types of claims (such as ineffective assistance of counsel) can be raised only on habeas review rather than on direct appeal, there is a Sixth Amendment right to effective counsel in connection with the first habeas proceeding in which such claims could be raised). Therefore, this claim is not cognizable on federal habeas corpus review.

V.   Double Jeopardy Claim

Petitioner contends his sentence constitutes a double jeopardy violation because the sentencing court applied the enhancements as a stiffened penalty for his prior offenses.

Petitioner raised this claim in his petition for review in the California Supreme Court. The court summarily denied the claim. As the Supreme Court recently confirmed, such silent denials are presumptively "adjudications on the merits" and, therefore are entitled the highly deferential standard of review mandated by the AEDPA. Richter, 131 S.Ct. at 783-785.

Here, Petitioner was sentenced to twenty-five years to life based on the jury's finding that he suffered two prior serious felony convictions. The Double Jeopardy Clause guarantees that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Double Jeopardy Clause protects against a second prosecution, and multiple punishments, for the same offense. White v. United States, 515 U.S. 389, 396 (1995); United States v. Wolfswinkel, 44 F.3d 782, 784 (9th Cir. 1995).

Prior strike convictions are not elements of the offense for purposes of double jeopardy. Almendarez-Torres v. United States, 523 U.S. 224, 247 (1998) (declining to adopt a rule that a recidivism enhancement significantly increasing the sentence would be considered an element of the offense). This rule is consistent with the traditional legal distinction between facts that are

elements of the crime and facts that are relevant only to sentencing. See, e.g., Almendarez-Torres, 523 U.S. at 228; Witte v. United States, 515 U.S. 389, 396 (1995); United States v. Watts, 519 U.S. 148, 154 (1997) (per curiam).

Therefore, because Petitioner's sentence was enhanced by his prior convictions, there is no double jeopardy violation, and the California Supreme Court's rejection of this claim was reasonable.

VI. Cruel and Unusual Punishment

Petitioner argues his sentence constitutes cruel and unusual punishment because it is grossly disproportionate to the crime.

Petitioner presented this claim in his petition for review filed in the California Supreme Court. The California Supreme Court summarily denied the claim. Thus, Petitioner must demonstrate there was no reasonable basis to support the state court's decision. Richter, 131 S.Ct. at 784.

"The Cruel and Unusual Punishments Clause prohibits the imposition of inherently barbaric punishments under all circumstances." Graham v. Florida, __ U.S. __, 130 S.Ct. 2011, 2021 (2010). In Lockyer v. Andrade, 538 U.S. 63 (2003), the Supreme Court discussed the current state of Eighth Amendment proportionality review and held that the only clearly established governing legal principle is that a "gross disproportionality" review applies to criminal sentences for a term of years. Id. at 72. Citing extensively to its past cases dealing with criminal sentencing and proportionality under the Eighth Amendment, the Court acknowledged that it has "not established a clear and consistent path for courts to follow." Id. The Supreme Court held that "the only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' frame work is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case." Id.

In Ewing v. California, 123 S. Ct.1179 (2003), the Supreme Court again reviewed its

Eighth Amendment jurisprudence, and chose to adopt Justice Kennedy's view [5] that:

> [There are] four principles of proportionality review-- the primacy of the legislature; the variety of legitimate penological schemes; the nature of our federal system; and, the requirement that proportionality be guided by objective factors– that inform the final one: The Eighth Amendment does not require strict proportionality between the crime and the sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime.

Ewing, at 1186-1187.

In this instance, because the jury found that Petitioner had suffered two prior serious felony convictions, he was sentenced to twenty-five years to life under the Three Strikes law. Petitioner has a substantial criminal history, including convictions for burglary, seven convictions for unlawful taking of a vehicle, as well as convictions for attempted robbery, robbery, escaping from prison and evading a police officer. (Lod. Doc. 8 [Under Seal], at 657-659.) At the time Petitioner was sentenced in this case, he was already serving a life sentence imposed by the Los Angeles Superior Court case number BA198921. Based on Petitioner's lengthy history, the California Supreme Court's rejection of this claim was not contrary to or an unreasonable application of United States Supreme Court authority as set forth in Ewing and Andrade.

## VII.   Copy of Post-Trial Evidentiary Hearing Transcripts

Petitioner contends the court erred in denying him a copy of the post trial evidentiary hearings transcripts. He also contends that counsel for the evidentiary hearing was ineffective. Petitioner's contentions are merely rephrases of the claim raised in Ground Two, discussed *supra* in section IV. In any event, Respondent's counsel provided Petitioner with a copy of the evidentiary hearing transcript for use in preparing his traverse. (See ECF NO. 46.) Accordingly, there is no basis for relief.

## VIII.   Challenge to Restitution Fine

In Ground Six, Petitioner claims the trial court abused its discretion by ordering him to

---

[5] As expressed in his concurring opinion in Harmelin v. Michigan, 501 U.S. 957, 1001 (1991), *citing* Solem v. Helm, 463 U.S. 277, 288 (1983).

pay a restitution fine of $10,000, without considering his ability to pay.[6]

In order for habeas corpus relief, Petitioner must demonstrate "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). There must be a nexus between a petitioner's claim and the unlawful nature of confinement. Bailey v. Hill, 599 F.3d 976, 980 (9th Cir. 2010). A challenge to a restitution order does not provide such nexus. Id. at 980-981 (claim that petitioner ordered to pay restitution in violation of Constitution does not constitute claim that petitioner is in custody in violation of Constitution). Thus, because Petitioner's challenge to the restitution fine does not affect the duration of his custody, the claim does not present a federal question.

<u>RECOMMENDATION</u>

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.   The instant petition for writ of habeas corpus be DENIED; and

2.   The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   August 17, 2011**                 /s/ Sandra M. Snyder
                                                                UNITED STATES MAGISTRATE JUDGE

---

[6] Petitioner was ordered to pay a fine of $10,000 pursuant to section 1202.04(b).